FILED
COURT OF APPEALS
DIVISION II

2015 MAY -5 AM 9: 28

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of | No. 46298-2-II |
| TIMOTHY M. PUTMAN, | |
| Appellant, | |
| and | |
| DEANNE M. PUTMAN, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, C.J. — Tim Putman appeals the trial court's order vacating a default dissolution decree and related orders. He argues that the trial court abused its discretion when it granted Deanne Putman's CR 60(b) motion based on excusable neglect. We hold that the trial court did not abuse its discretion when it concluded that Deanne[1] submitted substantial evidence of a prima facie defense, her failure to appear in the action was excusable, she acted with due diligence to vacate the default order, and Tim will suffer no substantial hardship. We affirm.

### FACTS

In April 2013, Tim filed a dissolution of marriage petition. Deanne accepted service of the petition but did not appear, answer, or hire an attorney.

---

[1] To avoid confusion, we refer to the parties by their first names for clarity and intend no disrespect.

Tim and Deanne met once in the early stages of the dissolution to discuss a property settlement but did not reach an agreement. In July 2013, Tim's attorney sent Deanne a formal, initial settlement proposal. In part, Tim proposed that Deanne keep several insurance brokerages and other businesses that they owned together and that she pay Tim $700,000 for his interest in the businesses. Deanne rejected the agreement because the $700,000 proposed settlement amount was too high.

In November 2013, Tim filed an amended dissolution petition and served Deanne with a copy on November 14. The amended petition was identical to Tim's initial proposal except that it requested a new property division: it required Deanne to pay Tim $500,000 for his interest in their businesses.

On November 27, the trial court granted Tim's motion for a default judgment, which occurred without notice to Deanne. Tim also noted the final dissolution orders for presentation on December 11 without notice to Deanne.

Meanwhile, on December 1, Deanne sent Tim a series of text messages stating, among other things, that she did not agree with the property settlement proposal in the amended petition and that "'it is apparent I need [an attorney] as we will not come to terms without one.'" Clerk's Papers (CP) at 147. During this text message exchange, Tim did not tell Deanne about the default judgment or the hearing set for December 11.

On December 11, Tim testified about his marriage, the court's jurisdiction, and the property division he proposed in the amended petition.[2] The trial court entered the default orders and

---

[2] The amounts in the proposed property division were sums certain. CR 55(b).

divided the property as proposed in the amended petition. Copies of the default orders were mailed to Deanne on December 12.

In January 2014, Deanne moved to vacate the default orders under CR 55(c) and CR 60(b), arguing several grounds, including mistake, surprise, inadvertence, or excusable neglect. In support of her motion, Deanne submitted a declaration and copies of her December 1 text message conversation with Tim. She declared that she and Tim had "on-going discussions about how to manage [their] complex financial circumstances." CP at 38. Their financial circumstances were complicated because she and Tim owned several insurance agencies and other businesses together, had an interest in a building with two mortgages on it, and one of their insurance businesses owed $100,000 to the Internal Revenue Service (IRS). Deanne also stated that during their discussions about the property settlement, Tim "threw out a number [valuing their business] that had no basis in reality because it was more than twice what Allstate had told us the business was worth." CP at 39. Tim then used that number in the amended petition and, ultimately, the default orders.

Deanne declared that their finances could be problematic during a dissolution because, as an insurance agent, she must follow "very strict rules about money" and the default orders are "totally silent with regard to both the value of [their] assets and the extent of [their] liabilities." CP at 38. Moreover, Deanne opined that the default orders do not provide a "rational plan" to separate their business affairs. CP at 38. Deanne stated that she and Tim "continued to talk about reaching an agreement" and that she never communicated with Tim's attorney because she and Tim were able to talk about the issues themselves. CP at 39. She also declared that she told Tim that she did not agree with the property distribution in the amended petition on December 1, after

3

the default judgment but before the default orders were entered, and that Tim never told her about his plans to seek a default judgment.

Tim argued that Deanne had not shown good cause to vacate the default orders. In opposition to Deanne's motion, Tim provided a copy of the initial property settlement proposal, records of most of his attorney's attempts to correspond with Deanne, and a declaration. He declared that although they are both officers in the insurance brokerages and other businesses, he was not involved in operations and that if Deanne was unhappy with the fact that the default orders did not assign a value to their assets, she should have appeared.

The trial court concluded that what is fair and equitable is a defense in a family law case and that excusable neglect, Deanne's diligence in filing her motion to vacate, and the fact that Tim would suffer no hardship apart from litigating the case on its merits justified vacating the default orders and granted Deanne's motion under CR 60(b)(1).[3] The trial court also found, in relevant part, that Tim and Deanne had been talking "[t]hroughout this process" about their case, that Tim did not give Deanne notice of his plans to seek a default judgment, that "[i]t is clear Ms. Putman was not in agreement with the proposal that had been made in the . . . amended petition," and that Deanne told Tim, after the default judgment was entered but before the December 11 hearing, that she planned to hire an attorney because she disagreed with the settlement proposal in the amended petition. CP at 146-47.

Tim appeals the trial court's order vacating the default orders.

---

[3] Because Tim assigns error to only finding of fact 1.16, the remainder of the trial court's findings are verities on appeal. *Humphrey Indus., Ltd. v. Clay St. Assocs., LLC*, 176 Wn.2d 662, 675, 295 P.3d 231 (2013).

4

## ANALYSIS

### I. VACATION OF DEFAULT ORDERS NOT AN ABUSE OF DISCRETION

#### A. STANDARD OF REVIEW AND RULES OF LAW

We review a trial court's decision to vacate a default judgment under CR 60(b) for an abuse of discretion. *Little v. King*, 160 Wn.2d 696, 702, 161 P.3d 345 (2007). A trial court abuses its discretion when its decision is based on untenable grounds or made for untenable reasons. *Morin v. Burris*, 160 Wn.2d 745, 753, 161 P.3d 956 (2007). We find an abuse of discretion less "readily" after the trial court grants a CR 60(b) motion to vacate a default judgment than we would after the trial court denies a CR 60(b) motion, thus denying the parties a trial on the merits. *White v. Holm*, 73 Wn.2d 348, 351-52, 438 P.2d 581 (1968).

As a policy matter, we prefer to resolve disputes on their merits and do not favor default judgments. *Little*, 160 Wn.2d at 703. However, we must balance this policy against an interest in an "organized, responsive, and responsible judicial system where litigants . . . comply with court rules." *Little*, 160 Wn.2d at 703. Our fundamental consideration when reviewing a trial court's decision to set aside a default judgment is "'whether or not justice is being done.'" *Little*, 160 Wn.2d at 703 (internal quotation marks omitted) (quoting *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979)).

#### B. THE *WHITE* TEST

When deciding whether to grant a CR 60(b) motion to vacate a default judgment, the trial court must consider four factors from *White*:

> "(1) That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) that the

> moving party acted with due diligence after notice of entry of the default judgment; and (4) that no substantial hardship will result to the opposing party."

*TMT Bear Creek Shopping Ctr., Inc. v. Petco Animal Supplies, Inc.*, 140 Wn. App. 191, 201, 165 P.3d 1271 (2007) (quoting *White*, 73 Wn.2d at 352).

1. SUBSTANTIAL EVIDENCE SUPPORTS A PRIMA FACIE DEFENSE

Tim argues that Deanne failed to identify any defense and that she provided no evidence to support a defense. Deanne argues that because the statute governing dissolution proceedings requires courts to focus on ensuring a "just and equitable" distribution of community property, her claim that the default dissolution decree did not fairly distribute their community property is substantial evidence of a prima facie defense. We agree with Deanne.[4]

When determining whether substantial evidence supports a prima facie defense, the trial court must make all reasonable inferences from the evidence in Deanne's favor as the party moving to set aside the default orders. *Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 449, 332 P.3d 991 (2014), *review denied*, 182 Wn.2d 1006 (2015). Deanne must allege facts and the trial court need determine only whether she can demonstrate any set of circumstances that would entitle her to relief. *Ha*, 182 Wn. App. at 449. Substantial evidence is the quantum of evidence sufficient to persuade a rational, fair-minded person of an assertion's truth. *In re Marriage of Kim*, 179 Wn. App. 232, 244, 317 P.3d 555, *review denied*, 180 Wn.2d 1012 (2014).

Deanne's declaration describes why the property distribution was not fair or equitable. She stated that she and Tim had "on-going discussions about how to manage [their] complex financial

---

[4] Tim also argues that the trial court's finding of fact 1.16 was not supported by substantial evidence. This finding states that there are assets and debts that the dissolution decree did not distribute. Even assuming Tim's argument is correct, the trial court's remaining findings of fact support its decision to grant Deanne's CR 60(b) motion.

circumstances." CP at 38. Deanne explained that she and Tim are officers in an insurance brokerage, that they have an interest in a commercial property with two mortgages on it that the insurance brokerage had guaranteed, and that the brokerage owes approximately $100,000 to the IRS. Deanne also stated that during their discussions about the property settlement, Tim "threw out a number [valuing their business] that had no basis in reality because it was more than twice what Allstate had told [them] the business was worth." CP at 39. Tim used that number in the amended dissolution petition and that number ultimately appeared in the default orders. Because of the strict rules that, as an insurance agent, Deanne must follow, she thought that the property settlement in the amended petition did not establish a "rational plan" to unwind their financial affairs. CP at 38.

Based on these facts, the trial court concluded that "[t]here is always a defense in a family law case; what is fair and equitable is the issue." CP at 148. This conclusion is reasonable based on the trial court's findings of fact and Deanne's declaration. Finding of fact 1.7 references the text message exchange between Tim and Deanne where she told him, "'I am ready to get an attorney now to make it happen. I have not wanted that but it is apparent I need to as we will not come to terms without one.'" CP at 147. Finding of fact 1.8 states that Deanne did not agree with Tim's final settlement proposal.

Deanne's declaration provides an explanation of the complexity of their financial situation and Allstate's valuation of their businesses as support for her argument that the dissolution orders were not fair and equitable. Making all reasonable inferences in Deanne's favor, as we must, we hold that the trial court did not abuse its discretion when it concluded that these facts provide substantial evidence of a prima facie defense.

2. EXCUSABLE NEGLECT

Tim argues that excusable neglect typically applies only where the defendant's failure to appear was a result of her attorney's or agent's inaction or failures and that excusable neglect is not appropriate where, as here, the litigation "grinds to a halt" because of the defendant's own inaction or intransigence. Br. of Appellant at 14. We disagree and hold that the trial court did not abuse its discretion when it found that because of Tim and Deanne's ongoing discussions about their dissolution, Deanne's failure to respond was excusable neglect.

Courts determine whether excusable neglect applies on a case-by-case basis. *Rosander v. Nightrunners Transp., Ltd.*, 147 Wn. App. 392, 406, 196 P.3d 711 (2008).

Deanne declared that after Tim filed the initial dissolution petition, they had "on-going discussions about how to manage [their] complex financial circumstances" and that even after she received the amended dissolution petition and new settlement proposal, she and Tim "continued to talk to each other" and that Tim never told her that he was seeking a default judgment. CP at 38-39. Deanne's declaration, including their text message conversation, demonstrate that Deanne did not agree with the proposed settlement and that because of her disagreement, she intended to hire an attorney because they would "not come to terms without one." CP at 48.

Deanne's declaration provides substantial support for the court's findings of fact and the findings of fact in turn support its conclusions of law. The trial court based its conclusion that Deanne's failure to respond was excusable neglect on findings of fact 1.1, 1.8, and 1.9. These findings establish that (1) Tim and Deanne communicated about the case throughout the eight months between the dates that Tim filed the initial dissolution petition and the court entered the default dissolution decree, (2) Deanne did not agree with Tim's proposed settlement in the

8

amended petition, and (3) before the default orders were entered, Deanne told Tim that she planned to hire an attorney because she disagreed with his proposal.

Tim argues that under *Norton v. Brown*, 99 Wn. App. 118, 992 P.2d 1019, 3 P.3d 207 (1999), *review denied*, 142 Wn.2d 1004 (2000), and other cases, excusable neglect applies only in a situation where a defendant's attorney, insurer, or other agent is the cause of her failure to respond to an action and not where, as here, the defendant herself "willfully refused to appear or participate." Br. of Appellant at 15. However, this argument is unpersuasive for three reasons: (1) Tim's reliance on *Norton* is misplaced, (2) excusable neglect is applied on a case-by-case basis, and (3) Tim cites no authority for the proposition that excusable neglect does not apply here.

In *Norton*, the trial court entered a default judgment against Brown, a man at fault in a car accident. 99 Wn. App. at 120-21. Brown did not respond to the summons and complaint because his insurance company was handling the claim. *Norton*, 99 Wn. App. at 120. Division Three of this court held that Brown's failure to respond *was* excusable neglect because he was "under the impression that his interests were being protected by his insurer." *Norton*, 99 Wn. App. at 124. Division Three concluded that default judgments are usually only appropriate when litigation is "halted because of an essentially unresponsive party" and that Brown was not unresponsive because his insurance company had negotiated with Norton for over a year. *Norton*, 99 Wn. App. at 126. Contrary to Tim's assertion, the *Norton* court did not hold that excusable neglect is properly applied only when a third party caused the true party to fail to respond.

*Norton* actually supports the trial court's conclusion here because like Brown, Deanne was not an unresponsive party. In an unchallenged finding of fact, the trial court found that "[t]hroughout this process Ms. Putman had been talking to Mr. Putman about the case." CP at

9

146. Under *Norton*'s reasoning, Deanne's failure to file an answer or otherwise formally respond to the petition was excusable because she was not unresponsive and believed, reasonably, that Tim would have informed her if he planned to seek a default judgment. Therefore, Tim's reliance on *Norton* is misplaced.

Additionally, excusable neglect is determined on a fact-specific, case-by-case basis. *Rosander*, 147 Wn. App. at 406. In this case, the trial court found that the parties communicated regularly about the dissolution proceedings and that Deanne made clear her opposition to the property settlement and her plans to hire an attorney.

Finally, Tim provides no authority, and we are aware of none, to support his argument that excusable neglect does not apply in a situation where there were recent communications between the actual parties about the pending proceedings and only applies where the party's failure to formally appear was due to her agent's or attorney's mistake. Where authority is not cited "'in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" *Dep't of Ecology v. Wahkiakum County*, 184 Wn. App. 372, 377 n.3, 337 P.3d 364 (2014) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

We hold that the trial court did not abuse its discretion because substantial evidence supports the trial court's findings and in turn the findings support its conclusion that Deanne's failure to formally respond was excusable.

### 3. DEANNE ACTED WITH DUE DILIGENCE IN MOVING TO VACATE THE DEFAULT ORDERS

It is uncontested that the trial court did not err when it concluded that "Ms. Putman acted with due diligence because this [CR 60(b)] motion was filed promptly." CP at 148. Therefore, we address this factor no further.

### 4. NO SUBSTANTIAL HARDSHIP TO TIM

Tim argues, for the first time on appeal, that the trial court's decision to grant Deanne's CR 60(b) motion is a substantial hardship for three reasons: it (1) prevents him from remarrying, (2) has undesirable tax implications, and (3) requires him to incur further legal expenses. We disagree.

The prospect of having a trial of the case on its merits, without more, is not a substantial hardship. *Gutz v. Johnson*, 128 Wn. App. 901, 920, 117 P.3d 390 (2005) (citing *Pfaff v. State Farm Mut. Auto. Ins. Co.*, 103 Wn. App. 829, 836, 14 P.3d 837 (2000), *review denied*, 143 Wn.2d 1021 (2001)), *aff'd*, *Morin*, 160 Wn.2d 745.

Although Tim identifies three substantial hardships that he claims would result if the trial court granted Deanne's CR 60(b) motion, he did not raise any of those hardships below and the trial court concluded that the only potential hardship was future litigation. Therefore, because the prospect of further litigation is insufficient to establish a substantial hardship and Tim did not argue any other hardship to the trial court, we hold that the trial court did not err when it concluded that Tim would suffer no substantial hardship.

In sum, the trial court properly entered findings of fact that support its conclusions of law addressing each of the *White* factors. Accordingly, the trial court did not abuse its discretion in granting Deanne's motion to vacate the default orders.

11

## II. ATTORNEY FEES

Tim argues that he is entitled to attorney fees on appeal under RCW 26.09.140 and because of Deanne's "intransigence." Br. of Appellant at 22. We disagree.

RCW 26.09.140 provides that we may "from time to time" and "after considering the financial resources of both parties . . . order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." Where an applicable statute mandates the consideration of financial need in awarding attorney fees, the parties must submit financial affidavits no later than 10 days prior to the hearing. RAP 18.1(c).

Here, neither Tim nor Deanne filed a financial affidavit. We, therefore, cannot determine their financial resources, their financial need, or their ability to pay. Thus, attorney fees under RCW 26.09.140 are not appropriate.

In support of his argument about Deanne's "intransigence," Tim cites *In re Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120, *review denied*, 120 Wn.2d 1002 (1992), arguing that her "willful intent to drag her feet" caused him to incur additional fees to defend against her motion to vacate the default orders. Br. of Appellant at 22. Again we disagree.

Trial courts may order a party to pay attorney fees based on "intransigence" and have done so where the party drags her feet or obstructs, files frivolous or unnecessary motions, or increases the legal costs one party must incur by making trial "unduly difficult." *Greenlee*, 65 Wn. App. at 708 (citing *Eide v. Eide*, 1 Wn. App. 440, 445-46, 462 P.2d 562 (1969)).

Here, in unchallenged findings of fact, the trial court found that Deanne and Tim had communicated about their dissolution throughout the process and because they could not come to an agreement on a property settlement, Deanne planned to hire an attorney. The record does not

No. 46298-2-II

support Tim's argument that Deanne willfully dragged her feet, obstructed, or unduly delayed the dissolution process. Therefore, Tim is not entitled to attorney fees on appeal based on Deanne's alleged intransigence.

Accordingly, we affirm the trial court's decision to vacate the default orders and we deny Tim's request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, C.J.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MELNICK, J.

13