# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JUDY HA, | ) | No. 70423-1-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| SIGNAL ELECTRIC, INC., a Washington corporation, | ) ) ) | |
| Respondent, | ) ) | |
| JUANITA MARS aka JUANITA WRIGHT aka JUANITA CARPENTER, an individual; AEG LIVE NW, LLC d/b/a SHOWBOX SODO, a Washington limited liability company; and CITY OF SEATTLE, a local government entity, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | FILED: July 14, 2014 |

APPELWICK, J. — Ha sued Signal Electric after she was hit by a drunk driver in an intersection where Signal Electric was installing a new traffic light. Signal Electric was in Chapter 11 bankruptcy, so Ha sought and received permission to proceed. Ha then asked Signal Electric's bankruptcy attorney if he would accept service of process. The attorney agreed and executed an acceptance of service. However, the attorney sent the summons and complaint to Signal Electric's bankruptcy financial advisor, who forwarded them to the wrong insurance company and not to Signal Electric. When Signal Electric failed to appear, the trial court entered an order of default and default

judgment. Signal Electric eventually received notice and moved to vacate under CR 60(b)(5) for improper service of process; CR 60(b)(1) for mistake, inadvertence, or excusable neglect; and CR 60(b)(11) for extraordinary circumstances. The trial court granted Signal Electric's motion and vacated the default judgment. We affirm.

## FACTS

On the evening of October 28, 2010, Judy Ha attended a concert at Showbox Sodo, a venue located at 1700 1st Avenue South in Seattle. When the concert ended, Ha exited Showbox Sodo and walked to the southeast corner of 1st Avenue South and South Massachusetts Street. The intersection was under construction and Signal Electric, Inc. was installing a new traffic light. At the time, the crosswalks were unmarked and there were no traffic or pedestrian signals at the intersection. Ha and a group of people then walked westbound across the 1st Avenue South intersection. As they crossed, Juanita Mars failed to slow and drove her truck into the crowd, hitting Ha and several others. Ha suffered extensive injuries and incurred $197,511.22 in medical expenses as a result.

Mars admitted that she was drinking and driving when she struck Ha and others. Her blood alcohol content was 0.29 g/100 mL two hours after the collision. Police found her truck littered with empty and partially empty beer cans. Mars eventually pleaded guilty to vehicular assault.

On February 26, 2011, Signal Electric filed for Chapter 11 bankruptcy. Signal Electric retained J. Todd Tracy, of counsel at Crocker Law Group PLLC, as its bankruptcy attorney. Signal Electric filed an application with the bankruptcy court

2

requesting approval of Tracy's appointment as its bankruptcy counsel. In the application, Tracy agreed to render the following services:

> a. To take all actions necessary to protect and preserve Debtor's bankruptcy estate, including the prosecution of actions on Debtor's behalf. To undertake, in conjunction as appropriate with special litigation counsel, the defense of any action commenced against Debtor, negotiations concerning litigation in which Debtor is involved, objections to claims filed against Debtor in this bankruptcy case, and the compromise or settlement of claims.
>
> b. To prepare the necessary applications, motions, memoranda, responses, complaints, answers, orders, notices, reports, and other papers required from Debtor as debtor-in-possession in connection with administration of this case.
>
> . . . .
>
> d. To provide such other legal advice or services as may be required in connection with the Chapter 11 case.

The bankruptcy court granted the application.

Louise Tieman, a principal at vcfo,[1] was appointed as Signal Electric's financial advisor in the bankruptcy case. Tieman's engagement agreement specified that "vcfo is not a law firm and its services do not constitute legal advice. vcfo recommends that Client consult with legal counsel related to any and all subject matter requiring legal advice or legal representation."

On February 24, 2012, Ha sued Mars; AEG Live NW LLC, d/b/a/ Showbox Sodo; Signal Electric; and the City of Seattle. The complaint alleged, in part, that Signal Electric created an unsafe condition for Ha; failed to exercise ordinary care; failed to properly design, construct, and/or maintain the intersection; failed to properly ensure and maintain safety of the intersection; and failed "to ensure compliance with all laws,

---

[1] This company name appears throughout the record in lower case letters.

rules, and regulations applicable to the construction work it was performing." Ha claimed that these actions proximately caused her injuries. She requested both economic and non-economic damages. On March 1, 2012, Ha filed an amended complaint correcting Mars's legal name and aliases.

Ha completed service of process on Mars, Showbox Sodo, and the City of Seattle in early March 2012. All three answered Ha's complaint for damages. However, Ha could not complete service of process on Signal Electric, because Chapter 11 bankruptcy imposes an automatic stay on all collection efforts against the debtor.

On April 16, 2012, Ha filed a motion with the bankruptcy court seeking relief from the stay. The court granted Ha's motion and allowed her to proceed against Signal Electric. The court specified that "the stay is not lifted regarding collection or enforcement of judgment from [Signal Electric's] assets, except as to the proceeds of any applicable insurance policy that might satisfy a portion of Ms. Ha's claims, and any distribution made on Ms. Ha's claims in this bankruptcy."

After obtaining relief from the bankruptcy stay, Ha asked Tracy if he would accept service of process on Signal Electric's behalf. At the time, Signal Electric's registered agent, Bernell Guthmiller, was in poor health. Tracy spoke to Tieman once or twice on the phone about whether he should accept service for Signal Electric, given Guthmiller's health. Tieman and Tracy agreed that he should.

On July 11, 2012, Tracy executed an acceptance of service prepared by Ha's counsel. In it, Tracy claimed to be an attorney representing Signal Electric in the personal injury lawsuit. Tracy verified that "I have the authority to accept and/or waive service of process on its behalf." Tracy further agreed "that delivery of the Summons

4

and the Complaint to me constitutes proper service of process, and that service of process upon Signal Electric was completed on July 11, 2012." Tracy later explained, however, that he "did not intend to be signing as counsel for the Defendant, Signal Electric, Inc., as Crocker Law Group PLLC is a firm that specializes in bankruptcy law, and not personal injury or construction matters."

Tracy then forwarded the summons and complaint to Tieman, who sent them on to Alaska National Insurance. Tieman believed that Alaska National Insurance was the Signal Electric's insurance company at the time of the accident. Alaska National did not contact Tieman or anyone at Signal Electric about the lawsuit. Tieman later learned that Berkley North Pacific, not Alaska National, was Signal Electric's insurance company when Ha was injured.

On August 1, 2012, Douglas McDermott, Ha's attorney, e-mailed Tracy requesting an answer to Ha's complaint. Tracy did not respond, so Ha moved for an order of default against Signal Electric on August 16.

On August 24, Tracy finally responded to McDermott's August 1 e-mail asking, "Did the Insurance Company ever show up in this case. We sent them everything but never heard anything from them, as I am just the lowly bankruptcy lawyer." McDermott responded soon after, "Not to my knowledge." Tracy did not reply. McDermott then asked an associate to call Tracy. That same day, the associate left Tracy a voice mail telling him that they had heard nothing from the insurance company about the pending motion for default. Tracy did not return the call.

On August 28, the trial court granted Ha's motion for default. Upon Ha's motion, the trial court dismissed her claims against Mars, Showbox Sodo, and the City of Seattle without prejudice.

On January 11, 2013, the trial court entered default judgment in Ha's favor against Signal Electric for $2,199,501.86. On January 29, Ha forwarded the default judgment to Signal Electric. On February 25, Signal Electric's insurance company informed Ha that it had received the default judgment and was appointing new counsel for Signal Electric.

Signal Electric entered a notice of appearance on April 3, 2013, without waiving its objection to jurisdiction or improper service. Soon thereafter Signal Electric gathered declarations from Tracy, Tieman, and Signal Electric's president, Jerry Kittelson. On April 19, Ha's counsel requested that Signal Electric delay filing its motion to vacate the default judgment until Tieman could be deposed on May 2, 2013.

On May 2, Signal Electric moved to vacate default on three grounds. First, Signal Electric argued that the default judgment was void under CR 60(b)(5) due to lack of personal jurisdiction, because Ha failed to perfect service on Signal Electric. Signal Electric asserted that it did not authorize Tracy, its bankruptcy attorney, to accept service on its behalf in this litigation.

Second, Signal Electric asked the court to vacate under CR 60(b)(1) for mistake, inadvertence, surprise, and/or excusable neglect. Signal Electric asserted the defense that it did not proximately cause Ha's injuries:

> Signal Electric is not the cause of the plaintiff's injuries. Juanita Mars is. Ms. Mars struck Ms. Ha with her truck as the plaintiff was crossing the street in a group of people. When she pleaded guilty to

vehicular assault, Ms. Mars admitted that she had been drunk while driving, had not been focusing on her driving, and failed to slow while approaching the intersection where she struck Ms. Ha. The sole cause of the plaintiff's injuries was Ms. Mars's negligence. Signal Electric should be allowed to defend against the plaintiff's claims.

Lastly, Signal Electric argued that the default judgment resulted in manifest injustice and should be vacated under CR 60(b)(11).

The trial court granted Signal Electric's motion to vacate the default judgment, but did not specify on which basis it did so. Ha appeals.

## DISCUSSION

Default judgments are generally disfavored in Washington. Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). Courts prefer to determine cases on their merits rather than by default. Id. In reviewing an entry of default, the court's principal inquiry should be whether the default judgment is just and equitable. Id. at 581-82. A default judgment may be set aside in accordance with CR 60(b). CR 55(c)(1).

Ha argues that the trial court improperly granted Signal Electric's motion to vacate the default judgment under CR 60(b)(5) for improper service, CR 60(b)(1) for mistake or excusable neglect, and CR 60(b)(11) for extraordinary circumstances. We may affirm the trial court on any basis supported by the record. Amy v. Kmart of Wash., LLC, 153 Wn. App. 846, 868, 223 P.3d 1247 (2009).

### I.    CR 60(b)(5) Service of Process

Ha argues that Tracy had express and/or implied authority to accept service of process on Signal Electric's behalf. She contends that Signal Electric gave Tracy express written authority to take all actions necessary to protect and preserve the

7

bankruptcy state, including the defense of any action commenced against Signal Electric.

Proper service of the summons and complaint is essential to invoke personal jurisdiction over a party. Allstate Ins. Co. v. Khani, 75 Wn. App. 317, 324, 877 P.2d 724 (1994). A default judgment entered without personal jurisdiction is void. Id. Whether a judgment is void is a question of law that we review de novo. Dobbins v. Mendoza, 88 Wn. App. 862, 871, 947 P.2d 1229 (1997).

RCW 4.28.080(9) specifies that a summons shall be served on "the president or other head of the company or corporation, the registered agent, secretary, cashier or managing agent thereof or to the secretary, stenographer or office assistant of the president or other head of the company or corporation, registered agent, secretary, cashier or managing agent." Under agency law, the general rule is that if an attorney is authorized to appear on a client's behalf, the attorney's acts are binding on the client. Haller v. Wallis, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978).

An attorney may not, however, surrender a substantial right of a client without special authority granted by the client. Russell v. Maas, 166 Wn. App. 885, 890, 272 P.3d 273, review denied 174 Wn.2d 1016, 281 P.3d 687 (2012). Therefore, "an attorney needs the client's express authority to accept service of process."[2] Id. Requiring express authority is necessary to protect clients from possibly serious consequences arising from a misunderstanding between the client and the attorney.

---

[2] Ha emphasizes that Tracy verified in writing that he had authority to accept service of process on Signal Electric's behalf. However, Tracy's acceptance of service was not self-executing and is insufficient, by itself, to show express authority.

Graves v. P. J. Taggares Co., 94 Wn.2d 298, 304, 616 P.2d 1223 (1980). It also ensures that clients will be consulted on all important decisions if they so choose. Id.

Here, Tracy was retained as Signal Electric's bankruptcy counsel. Kittelson explained that the "scope of retention for J. Todd Tracy . . . was limited to representing Signal Electric, Inc. in the bankruptcy case." Tracy acknowledged the same in his declaration. He was not Signal Electric's general counsel.

However, Tracy was authorized to "take all actions necessary to protect and preserve Debtor's bankruptcy estate, including the prosecution of actions on Debtor's behalf." Tracy had further authority to "undertake, in conjunction as appropriate with special litigation counsel, the defense of any action commenced against Debtor." This language is broad and does not confine Tracy's authority to the bankruptcy proceeding. Rather, Tracy was expressly authorized to defend Signal Electric in "any action" and take "all actions necessary to protect and preserve" Signal Electric's bankruptcy estate. Given this language in Tracy's retainer agreement, we conclude that Tracy had express authority from Signal Electric to accept service of process in Ha's case.[3]

Ha effected proper service of process on Signal Electric when Tracy accepted the summons and complaint. Therefore, we hold that the default judgment is not void under CR 60(b)(5) for lack of personal jurisdiction. The trial court could not properly

---

[3] Ha argues that Tracy's express authority to accept service of process was demonstrated by his acceptance of service in other cases. However, we decline to rely on this fact as a basis to conclude that Tracy had express authority in this case. Ha also argues that Tracy's authority to undertake the compromise or settlement of claims necessarily included his authority to waive defenses like personal service. We do not reach this argument.

grant Signal Electric's motion to vacate on this basis. As such, we consider whether CR 60(b)(1) was an adequate basis to vacate the default judgment.

## II. CR 60(b)(1) Mistake and Excusable Neglect

Ha argues that Signal Electric failed to meet the requirements for vacating a default judgment under CR 60(b)(1). A party moving to vacate under CR 60(b)(1) must show that (1) there is substantial evidence supporting a prima facie defense; (2) the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) the defendant acted with due diligence after notice of the default judgment; and (4) the plaintiff will not suffer a substantial hardship if the default judgment is vacated. Little v. King, 160 Wn.2d 696, 703-04, 161 P.3d 345 (2007). Factors (1) and (2) are primary; factors (3) and (4) are secondary. Id. at 704. The test is not mechanical. Id. Whether or not a default judgment should be set aside is a matter of equity. Id.

We review a trial court's decision on a motion to vacate a default judgment for abuse of discretion. Morin v. Burris, 160 Wn.2d 745, 753, 161 P.3d 956 (2007). The trial court "should exercise its authority liberally, as well as equitably, to the end that substantial rights be preserved and justice between the parties be fairly and judiciously done." White v. Holm, 73 Wn.2d 348, 351, 438 P.2d 581 (1968). A trial court abuses its discretion when it is exercised on untenable grounds or for untenable reasons. Morin, 160 Wn.2d at 753. Abuse of discretion is less likely to be found if the default judgment is set aside. White, 73 Wn.2d at 351-52.

### A. Prima Facie Defense

Ha argues that Signal Electric failed to provide substantial evidence supporting a prima facie defense. In making this determination, the trial court must examine the evidence and reasonable inferences in the light most favorable to the moving party. Johnson v. Cash Store, 116 Wn. App. 833, 841, 68 P.3d 1099 (2003). The defendant must set out concrete facts and cannot merely state allegations. Id. at 847. The trial court need only determine whether the defendant is able to demonstrate any set of circumstances that would, if believed, entitle the defendant to relief. TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc., 140 Wn. App. 191, 203, 165 P.3d 1271 (2007).

Signal Electric asserted the defense that Mars was the sole cause of Ha's injuries. In support of this defense, Signal Electric submitted the information charging Mars with vehicular assault, the certification of probable cause, and Mars's guilty plea. This evidence demonstrated that Mars was extremely intoxicated when she struck Ha. Her truck was littered with empty beer cans. Mars admitted in her guilty plea that, "I knew I was drinking to excess and was not focusing on my driving and failed to slow while approaching an intersection with a large group of pedestrians and ignored the warning of a construction worker."

Signal Electric does not need to conclusively establish that Mars was the sole cause of Ha's injuries:

> "[W]here the moving party is unable to show a strong or conclusive defense, but is able to properly demonstrate a defense that would, prima facie at least, carry a decisive issue to the finder of the facts in a trial on the merits, the reasons for his failure to timely appear in the action before the default will be scrutinized with greater care, as will the seasonability of his application and the element of potential hardship on the opposing party."

11

Id. at 201 (quoting White, 73 Wn.2d at 352-53). Signal Electric needs to set forth only a prima facie defense. Signal Electric has done so based on the facts submitted.

B. Mistake

Ha asserts that Signal Electric's failure to appear was inexcusable, because it resulted from a breakdown of internal procedure. Ha also argues that Signal Electric's failure to appear was not justified by mistake or excusable neglect, because Signal Electric made a deliberate choice not to participate.

When a company's failure to respond to a properly served summons and complaint was due to a breakdown of internal office procedure, it is not excusable under CR 60(b)(1). TMT, 140 Wn. App. at 212-13. Neglect was inexcusable when the summons and complaint were mislaid while general counsel was out of town. Prest v. Am. Bankers Life Assurance Co., 79 Wn. App. 93, 100, 900 P.2d 595 (1995). Similarly, in Johnson, failure to respond was deemed inexcusable when an employee other than general counsel accepted service of process and then neglected to forward the complaint. 116 Wn. App. at 848-49. There, the employee's failure to forward the summons and complaint bordered on willful noncompliance. Id. Ha also cites Brooks v. University City, Inc., where the registered agent failed to forward the summons to its legal department. 154 Wn. App. 474, 479, 225 P.3d 489 (2010).

Ha's case is readily distinguishable. As we determined above, Tracy is not Signal Electric's general counsel. Nor is he an office employee. Rather, he is an independent attorney retained for the Chapter 11 bankruptcy proceeding. The same is true of Tieman, who was retained solely as a financial advisor in the bankruptcy action.

12

Their mistakes were not a breakdown of internal procedure, and so the rule of <u>TMT</u> does not apply here.

Furthermore, it constitutes a mistake under CR 60(b)(1) where a defendant's failure to timely answer results from a misunderstanding, like here. <u>See</u> <u>Showalter v. Wild Oats</u>, 124 Wn. App. 506, 514, 101 P.3d 867 (2004). In <u>Showalter</u>, a manager at Wild Oats misunderstood a paralegal's request to forward the summons and complaint to an internal claims administrator, which was contrary to Wild Oats's customary business practice. <u>Id.</u> As a result, the manager inadvertently failed to pass on the summons and complaint to the internal claims administrator. <u>Id.</u> at 509, 514. Similarly, a genuine misunderstanding between an insured and his insurer as to who is responsible for answering the summons and complaint constitutes mistake and excusable neglect. <u>Berger v. Dishman Dodge, Inc.</u>, 50 Wn. App. 309, 312, 748 P.2d 241 (1987); <u>see also</u> <u>Norton v. Brown</u>, 99 Wn. App. 118, 124, 992 P.2d 1019, 3 P.3d 207 (1999).

Here, Signal Electric was in Chapter 11 bankruptcy and its registered agent was in poor health. Ha asked Tracy to accept service. Tracy was uncertain whether he should do so. So, he consulted with Signal Electric's bankruptcy financial advisor, Tieman. Tracy and Tieman agreed that, given the unusual circumstances, Tracy should accept service of process on Signal Electric's behalf. Tracy then sent the summons and complaint to Tieman. She mistakenly forwarded them on to the wrong insurance company and failed to forward them to forward them to Signal Electric. As a result, neither Signal Electric nor its insurer, who would have a duty to defend, had actual notice of the lawsuit.

These facts demonstrate that Signal Electric's failure to respond was not deliberate or even neglectful. Rather, it resulted from Tracy's genuine misunderstanding as to whether he should accept service and Tieman's mistake in forwarding the summons and complaint to the wrong insurance company.

Ha characterizes Tracy's conduct as negligent rather than as a mistake. We disagree. However, even if we regard Tracy's conduct as negligent, Ha does not prevail. Ha refers to the following rule: "Absent fraud, the actions of an attorney authorized to appear for a client are binding on the client at law and in equity. The 'sins of the lawyer' are visited upon the client." Rivers v. Wash. State Conference of Mason Contractors, 145 Wn.2d 674, 679, 41 P.3d 1175 (2002) (footnotes omitted). Accordingly, she argues, "'the incompetence or neglect of a party's own attorney is not sufficient grounds for relief from a judgment in a civil action.'" M.A. Mortenson Co., Inc. v. Timberline Software Corp., 93 Wn. App. 819, 838, 970 P.2d 803 (1999) (quoting Lane v. Brown & Haley, 81 Wn. App. 102, 107, 912 P.2d 1040 (1996)), aff'd, 140 Wn.2d 568, 998 P.2d 305 (2000). Ha asserts that, under this rule, Tracy's negligence is binding on Signal Electric and cannot provide a basis to vacate the default judgment.

This rule comes from the Washington Supreme Court's decision in Haller, 89 Wn.2d at 547. There, the client sought relief from a settlement that her attorney agreed to over her objections. Id. at 540, 542. The Haller court distinguished the equities at play in consent judgments like settlements versus default judgments. Id. at 544. Finality is favored in consent judgments. Id. As such, consent judgments may not be set aside for excusable neglect—only for fraud or mutual mistake. Id. Conversely, default judgments are disfavored, because courts prefer to try cases on their merits.

Griggs, 92 Wn.2d at 581. They can be set aside under CR 60(b)(1) for excusable neglect and, as the case law demonstrates, unilateral mistake. See, .e.g., Showalter, 124 Wn. App. at 514.

Therefore, the rule from the Haller line of cases that Ha relies on here has no application to default judgments. See Lane, 81 Wn. App. at 104-06. None of those cases involved a default judgment.[4] Rather, with respect to default judgments, "[w]hat is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome."[5] Akhavuz v. Moody, 178 Wn. App. 526, 534-35, 315 P.3d 572 (2013).

---

[4] Rivers, 145 Wn.2d at 677 (dismissal as a sanction for failing to comply with a discovery order and case schedule deadlines); M.A. Mortenson, 93 Wn. App. at 826 (summary judgment); Lane, 81 Wn. App. at 105-06 (summary judgment); cf. Barr v. MacGugan, 119 Wn. App. 43, 46-47, 78 P.3d 660 (2003) (mentioning, but not applying Haller rule in dismissal as a sanction for discovery order violation).

[5] The rule of Haller is further distinguishable here. The client in Haller was advised at all times of the proposed settlement and her objections were brought to the trial court's attention. 89 Wn.2d at 540-41. By contrast, in Graves, the attorney stipulated away the client's right to a jury trial—a substantial right—without the client's authorization and without the client's knowledge. Graves v. P.J. Taggares Co., 25 Wn. App. 118, 119, 125, 605 P.2d 348 (1980), aff'd, 94 Wn.2d at 306. The Graves court held that "no client should be at the mercy of his attorney, who, without the authority or knowledge of his client stipulates away such a right directly contrary to the client's interest, as was done in the case at bench. If there is substantial doubt, the client's interest should be protected." Id. at 125 (emphasis added). The Graves court distinguished Haller on this basis. Id. at 122-24. As established above, the authority to accept service of process is a substantial right, like the right to a jury trial in Graves. Russell, 166 Wn. App. at 890. Though we conclude that Tracy had authority under his retainer agreement to accept service, he did so in this case without notice to Signal Electric beforehand and without giving notice to Signal Electric after doing so. Under Graves, judgments may be set aside if the attorney surrenders a substantial right of the client without the client's knowledge. Graves, 25 Wn. App. at 125.

We hold that Signal Electric's failure to respond was occasioned by Tracy's and Tieman's mistake. Reversing the trial court's order vacating default in the face of this mistake would unjustly deny Signal Electric a trial on the merits.

C. Due Diligence

Ha argues that Signal Electric did not act with due diligence in moving to vacate, because it waited eight months after the order of default and three months after the default judgment to seek relief.

A motion to vacate under CR 60(b)(1) must be filed within a reasonable time and within one year from the judgment. Luckett v. Boeing Co., 98 Wn. App. 307, 310, 989 P.2d 1144 (1999). What constitutes a "reasonable time" depends on the facts and circumstances of each case. Id. at 312. The critical period is between when the moving party became aware of the judgment and when it filed the motion to vacate. Id. Three months is not within a reasonable time to respond to a default judgment following notice of entry. Gutz v. Johnson, 128 Wn. App. 901, 919, 117 P.3d 390 (2005), aff'd by Morin v. Burris, 160 Wn.2d 745. Conversely, a party that moves to vacate within one month of notice satisfies the diligence requirement. Id.

Here, Ha forwarded the default judgment to Signal Electric on January 29, 2013. On February 25, 2013, Signal Electric's insurance company received notice and informed Ha that it was appointing new counsel. Until that point, Signal Electric had no notice of default, because Tieman forwarded the summons and complaint to the wrong insurance company. Signal Electric then entered a special notice of appearance on April 3, 2013. This was just over one month after it received notice of the default judgment. From there, Signal Electric quickly collected declarations from key

witnesses: Tracy on April 10, Tieman on April 15, and Kittelson on April 18. On April 19, Ha's counsel asked Signal Electric to delay filing its motion to vacate until Tieman could be deposed on May 2. Then, on May 13, Signal Electric moved to vacate the default judgment. This was two and a half months after Signal Electric received notice of default.

These facts demonstrate that Signal Electric acted quickly and diligently in developing the necessary factual record and filing its motion to vacate. And, Signal Electric likely would have filed its motion to vacate earlier, except that it accommodated Ha's request to wait until Tieman was deposed. We hold that Signal Electric acted with due diligence after receiving notice of the default judgment.

D. Substantial Hardship for Plaintiff

Ha argues she would suffer substantial prejudice from vacating default, because it would delay resolution of her claims. However, "vacation of a default judgment inequitably obtained cannot be said to substantially prejudice the nonmoving party merely because the resulting trial delays resolution on the merits." Johnson, 116 Wn. App at 842. Ha also asserts that she will have to recommence litigation against the dismissed defendants, which may require her to pay various expenses. We decline to characterize the possibility of bearing some expenses as a substantial hardship. Therefore, we hold that Ha has not established that she will suffer a substantial hardship.

Signal Electric has met the four requirements for vacating a default judgment under CR 60(b)(1). We hold that the trial court did not abuse its discretion in vacating

the default judgment based on Signal Electric's mistake and excusable neglect. We therefore affirm the trial court on this basis.[6]

III.    Signal Electric's Motion to Strike

Signal Electric moves to strike the two exhibits attached to Ha's reply brief. The exhibits are Crocker Law Group's bankruptcy court application for attorney fees and Crocker Law Group's timesheet for August 2012 through May 2013. Signal Electric points out that both exhibits were created after the trial court vacated the default judgment. Ha concedes as much. Ha argues, however, that the exhibits demonstrate that Tracy worked on this case. Pursuant to RAP 18.9(a), Signal Electric requests fees related to its motion to strike.

Under RAP 9.11(a), we may allow additional evidence to be taken if it "would probably change the decision being reviewed." See also Wash. Fed'n of State Emps., Council 28 v. State, 99 Wn.2d 878, 884-85, 665 P.2d 1337 (1983). The two exhibits address service of process under CR 60(b)(5) and are unnecessary to our review. We decline to consider them. We therefore grant Signal Electric's motion to strike. However, we deny Signal Electric's request for fees under RAP 18.9(a). Ha properly requested that we consider the additional exhibits under RAP 9.11.

IV.    Attorney Fees

Signal Electric argues that it should be awarded attorney fees and costs under RAP 18.9(a), because Ha's appeal is frivolous.[7] An appeal is frivolous if there are no

---

[6] Because we affirm on CR 60(b)(1), we do not reach CR 60(b)(11).

[7] Signal Electric also requests that we sanction Ha for violating the RAPs. Signal Electric claims that Ha's statement of the case "is littered with argument and unfounded allegations against both Signal Electric and its defense counsel." We decline to sanction Ha on this basis.

18

debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there is no reasonable possibility of reversal. Tiffany Family Trust Corp. v. City of Kent, 155 Wn.2d 225, 241, 119 P.3d 325 (2005). An appeal that is affirmed simply because the arguments are rejected is not frivolous. Id. Ha's appeal is not frivolous, because she presents several debatable, and even meritorious, arguments. We accordingly deny Signal Electric's request for fees.

We affirm.

WE CONCUR: