# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| JON MORRONE, | No. 55920-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| NORTHWEST MOTORSPORT, INC., a Washington corporation; NORTHWEST MOTORSPORT, LLC, a Washington limited liability company, | |
| Appellants. | |

WORSWICK, J. — Northwest Motorsport, Inc., and Northwest Motorsport, LLC, (collectively NWMS) appeal the trial court's entry of an order of default, default judgment, supplemental default judgment, and denial of NWMS's motion to vacate default judgment on a complaint filed by Jon Morrone. Morrone, NWMS's former in-house counsel, sued NWMS for disability discrimination, retaliation, wrongful termination, breach of employment contract, willful wage withholding, and violation of the Family Leave Act. NWMS was properly served but did not appear or respond to Morrone's complaint. The trial court granted Morrone's motion for default and subsequent motion for default judgment on shortened time. NWMS moved to vacate, and the trial court denied its request.

NWMS argues that the trial court abused its discretion when it denied NWMS's motion to vacate the judgment. We hold that the trial court abused its discretion when it denied NWMS's motion to vacate the default judgment. Accordingly, we reverse.

FACTS

I. BACKGROUND

A.    *Employment Contract*

Jon Morrone was an experienced attorney working as a partner at Williams Kastner & Gibbs. Morrone represented NWMS in several actions. The CEO of NWMS, Don Fleming, asked Morrone to leave his role and join NWMS. In January 2017, Morrone left the firm and entered into an employment contract with NWMS. He agreed to act as NWMS's in-house general counsel.

The contract provided, in pertinent part:

1.3    *Employee shall be entitled to salary and benefits during the three-year Contract Term regardless of whether Employee's employment is terminated, for any reason, before the three-year anniversary unless Employee resigns his position before the end of the Contract Term. Stated differently, Employer guarantees Employee the salary and benefits described herein for a period of three years after the Start Date.* In the event Employee's employment becomes terminated, nothing in this Agreement prevents Employee from seeking and obtaining employment from a different employer before the expiration of the Contract Term, and any such employment shall not end Employer's promise to pay Employee his salary and benefits for the Contract Term.

. . . .

2.3    As Chief Legal Officer, Employee shall plan, organize, manage, budget for, direct, staff and control the legal work of Employer. *This may include, at Employee's discretion as Chief Legal Officer and Director of Legal Affairs, hiring of personnel, including outside counsel as needed.*

. . . .

3.1　Employer agrees *Employee shall have final authority over the selection of personnel*, including outside counsel as needed, *as well as allocation of resources within Employee's department*, provided that authority is exercised in accordance with all laws, statutes, and regulations.

. . . .

4.3　Employee shall be entitled to 10% of each and every settlement or award (by way of jury, judge, or arbitrator) as bonus monies during the Contract Term. *The settlement or award amount will not include attorney's fees as part of this bonus. Stated differently, the settlement or award amount shall only consist of damages collected as part of a settlement or award.* . . .

. . . .

5.2.1　Annual Bonuses: Employee shall be paid $20,000.00 on each anniversary of his Start Date. Said monies are in addition to all other methods and forms of payment described herein, and shall be classified as a separate anniversary bonus.

5.2.2　Structured Long Term Incentive Plan:

. . . .

[ ] Employee shall be eligible for any stock, ownership, or other benefits offered to other employees of Employer as they come available.

. . . .

5.3　In the event that there is a change in majority ownership of Northwest Motorsport, Inc., during the Contract Term, the Contract Term shall automatically extend to ten years, with termination at will solely by Employee. All rights and guarantees owed to Employee within the three-year contract term shall thus be guaranteed to Employee during this extended ten-year period.

Clerk's Papers (CP) at 135-37 (emphasis added).

Morrone's base salary in this role was $300,000 per year. Morrone and Fleming signed

the contract.

B.      *Morrone's Family Tragedy,* Sunset Chevrolet*, and Pasco Trial*

Morrone began work at NWMS in March 2017.  Throughout his time at NWMS,

Morrone litigated *Northwest Motorsport, Inc. v. Sunset Chevrolet, Inc.,*  Pierce County Super. Ct.

No. 16-2-12141-7.[1]  The *Sunset Chevrolet* litigation culminated in December 2018 with the trial

court awarding NWMS fees, costs, and interest totaling more than $1.8 million.  Sunset

Chevrolet filed a supersedeas bond to secure judgment, and appealed the decision.  NWMS did

not pay Morrone a bonus because the judgment awarded was pending appeal.

Around the same time, Morrone's wife suffered complications with her pregnancy.

Morrone informed NWMS staff of the complications, but based on his experience with Fleming,

and witnessing Fleming's treatment of two other employees, Morrone was concerned that

sharing any information about his emotional trauma would damage his relationship with NWMS

and negatively impact his reputation as a lawyer.  Morrone's wife gave birth to a stillborn

daughter on January 4, 2019.

A doctor then provided a note for Morrone for six weeks of leave, which Morrone

submitted to NWMS as a Family Medical Leave Act (FMLA) request.  However, NWMS had

another trial coming up in February, 2019, in Pasco.  When Morrone informed Fleming of his

daughter's death, Fleming expressed his condolences but in the same sentence pivoted to how

---

[1] *Northwest Motorsport, Inc. v. Sunset Chevrolet, Inc.,* No. 52799-5-II (Wash. Ct. App. Oct. 13, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2052799-5-II%20Unpublished%20Opinion.pdf.  This case is cited for its factual background, not for its precedential value.

Morrone's trial preparation was proceeding. After hearing about Morrone's daughter's death, NWMS's chief financial officer commented to Morrone that he did not believe Morrone's wife looked pregnant—intimating that Morrone was lying about his daughter's death. Morrone provided the HR director with photographs of his late daughter to show he was not lying.

Convinced he had to return to work to please Fleming and maintain his professional reputation, Morrone took one week of leave and then went to Pasco for the trial. The Pasco trial lasted six weeks, and Morrone lived there for the duration.[2] While in Pasco, Morrone was on the other side of a wall from an office Fleming and others were using. Morrone could hear Fleming and other employees discussing a stock plan Fleming was establishing. No one at NWMS included Morrone in the conversation.

After returning from Pasco, Morrone was cut out of management conversations and decisions. In April, Fleming barred Morrone from backfilling a legal assistant position that had become vacant.[3] In May, Fleming, in a very hostile meeting, accused Morrone of swindling him, telling Morrone that his $20,000 anniversary bonus from the employment contract was meant only to be a one-time payment, despite NWMS honoring the commitment the year prior. After that encounter, Morrone determined he was on Fleming's bad side, found his workplace intolerable, and began seeking work elsewhere.

---

[2] Morrone and his family reside on Mercer Island.

[3] The previous person in the position was Fleming's girlfriend. Fleming stated he was informed by NWMS's human resources department that he could not backfill the vacant position because the legal assistant was on protected leave.

C.      *Morrone's Departure and Northwest Motorsport's Sale*

Morrone sent NWMS a letter on October 1, 2019, stating that he was "resigning" his

position effective October 24.  CP at 264.  The letter read:

> I will be resigning from my position as Chief Legal Officer with Northwest
> Motorsport.  I have worked my tail off to protect Northwest Motorsport from all
> sorts of risk since I first met Kenny and Don many years ago.  But, it is clear that
> my journey with Northwest Motorsport has reached its end.  My last day of
> employment will be October 24, 2019, with several pre-planned days off intermixed
> beforehand.
>
> I am rooting for your success.  You and Joe have a good vision for this company.
> I hope that I have helped you implement your vision along the way – I've sure tried
> to help as much as possible.  I intend to continue helping you implement your vision
> during my remaining days with Northwest Motorsport, and to work closely with
> you to tie up loose ends and transition my workload.

CP at 264.

Morrone found employment with a different company where his base salary was

approximately $100,000 less per year than he was making at NWMS.

Fleming sold Northwest Motorsport, Inc., in February 2020.  The new owner converted

the entity into Northwest Motorsport, LLC.

We affirmed the trial court's award to NWMS in the *Sunset Chevrolet* case and entered

the mandate on December 4, 2020.  On December 11, Morrone contacted NWMS, requesting

that it remit payment to him for his earnings under his contract for his work on *Sunset

Chevrolet*.[4]  A NWMS employee responded, "The contract is with Northwest Motorsport,

Inc. . . . I am with Northwest Motorsport, LLC, which is not the company on your contract."

---

[4] Morrone requested 10% of the amount awarded to NWMS under his employment contract, approximately $180,000.

CP at 145. Morrone responded that Northwest Motorsport, Inc., was converted into Northwest Motorsport, LLC, and that he would communicate with Northwest Motorsport, LLC, to obtain his back pay because Northwest Motorsport was the named party in the *Sunset Chevrolet* case. Neither Northwest Motorsport, Inc. nor Northwest Motorsport, LLC remitted payment to Morrone.

## II. PROCEDURAL HISTORY

A. *Complaint*

On February 11, 2021, Morrone filed a complaint against both Northwest Motorsport, Inc., and Northwest Motorsport, LLC. He alleged he was constructively discharged from NWMS because the working conditions were intolerable, and this forced him to take a different job for less money. Morrone alleged six causes of action: (1) disability discrimination under Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW; (2) retaliation for requesting disability-related leave under RCW 49.60.210; (3) wrongful termination because of his exercise of a legal right or privilege, alleging that NWMS interfered with his ability to obtain FMLA leave and discriminated against him once he had; (4) breach of the employment contract; (5) willful wage withholding under RCW 49.52.050 and 49.48.030, for not paying his bonus as required by the contract; and (6) violation of the Family Leave Act, former RCW 49.78.330 (2019). Morrone served the summons and complaint on NWMS that same day.

B. *Default*

NWMS did not answer or file any response, and on March 4, 21 days after filing his complaint, Morrone moved for default. A superior court commissioner entered an order of

default against NWMS that same day. Later that day, Morrone moved to shorten time for the trial court to hear his motion to enter default judgment for amount certain. That afternoon, the trial court entered an order, allowing Morrone to enter a default judgment on shortened time.

Morrone then filed a motion to enter default judgment on amount certain and to set an evidentiary hearing for the remaining issues. The trial court held a hearing on March 8. The trial court entered a judgment for amount certain of $407,272.34. This amount was based on the trial court's ruling that the withholding of wages for the unpaid bonus was willful, and included liquidated double damages and reasonable fees and costs. The trial court scheduled an evidentiary hearing on the remaining damages for the following day, March 9.

The court conducted an evidentiary hearing on March 9. NWMS did not appear. Morrone testified as above. The court entered a supplemental default judgment, entered extensive findings of fact consistent with Morrone's testimony, and deemed the facts in the complaint admitted.

The court found that Morrone returned from FMLA early for fear of his career, that NWMS announced a new employee stock plan without telling Morrone during the Pasco trial, and that NWMS ostracized and retaliated against Morrone for his request to take leave and his statements about his mental health. The court found that Morrone was constructively discharged and that the salary at his new employment was $103,700 less per year than at NWMS. The court entered this amount as past economic damages. The court further found that Morrone suffered future economic losses in the amount of $742,200 and noneconomic losses for discrimination

and retaliation totaling $500,000. The court entered the supplemental default judgment in open court and the hearing concluded at 2:33 PM.

C.     *NWMS's Appearance and Motion to Vacate*

NWMS entered a notice of appearance on the afternoon of March 9, approximately one hour after the court entered the supplemental default judgment.

Two days later, on March 11, NWMS filed a motion to vacate the order of default and default judgment. In its motion, NWMS stated its defenses to Morrone's causes of action and called its failure to appear a "good faith mistake by counsel." CP at 187-91. NWMS's counsel, Sheryl Willert, filed a declaration in support of the motion. She submitted the following regarding the failure to appear: "Unfortunately, the notice of appearance was not filed earlier due to a miscommunication at my office. Subsequently, our office discovered that Plaintiff had obtained an order for default and default judgment." CP at 199. Her declaration included further statements on NWMS's defenses to Morrone's claim, based entirely on allegations in Morrone's complaint, rather than on Morrone's testimony. No NWMS employee filed any declaration at that time.

Morrone filed a response to NWMS's motion to vacate, pointing out that NWMS had failed to submit any evidence of defenses. NWMS then filed a reply that included a declaration from Fleming. Fleming stated Morrone's testimony to the court was "largely untrue" and that he never engaged in retaliatory or discriminatory behavior. CP at 243. Fleming stated that he never perceived that Morrone had any disability, and never took action in furtherance of such belief. He claimed that his lack of communication with Morrone on business decisions was due to his

heart condition and a move to Montana. He also stated that he had sold NWMS and was not the owner when Morrone commenced his lawsuit. He denied the existence of any stock plan. He also stated that NWMS could not hire a replacement for Morrone's legal assistant because she had not resigned, but was on protected family leave to care for her ailing mother.

The trial court held a hearing on NWMS's motion to vacate on March 26. The court heard argument, but no testimony was taken. During argument, Willert stated:

> This is not a case where the defendant consciously decided that it would not participate in this litigation, Your Honor. To the contrary, this is a matter that was fully intended to be defended. This is a mistake, not of the client, but this is a mistake that resulted as a result of miscommunications in my office.
>
> When this matter was filed and served on Defendant, they tendered it through me and requested that I tender it to the insurer, and I am not panel counsel for the insurer. So my assistant believed that we would not be defending this case but that other counsel would, in fact, be defending this case.
>
> Unfortunately, the insurer then notified us, on March 9th, the day that I filed a notice of appearance, that they would not be appointing counsel at that time, and that was when I – when I, in fact, filed a notice of appearance and believed that this miscommunication and misunderstanding in my office is exactly what caused the failure to calendar dates.

VRP (Mar. 26, 2021) at 56.

Willert did not say when NWMS tendered the summons and complaint to her, or when she first notified NWMS's insurer of the lawsuit.

The trial court denied NWMS's motion to vacate. The court order stated that the court considered NWMS's motion to vacate, Willert's declaration, Morrone's opposition, NWMS's reply, and Fleming's declaration. The court explained that the facts Willert relayed to the court in the hearing were not in any of the pleadings, which stated only that there had been a

10

miscommunication in her office. The court found that the evidence before it did not meet the standard for excusable neglect required to vacate the default. Likewise, the court noted that NWMS did not present evidence of defenses, but instead stated that it was a contract dispute and that the court should look to the contract. The court found that the defenses were inadequate to vacate the default judgment. The court concluded:

> 1. Defendants did not provide substantial evidence supporting any defense;
>
> 2. The evidence submitted does not support excusable neglect, inadvertence or mistake following the proper service of the Summons and Complaint on Defendants on February 11, 2021;
>
> 3. The materials submitted by Defendants do not provide any facts to suggest anything more than a breakdown in office procedures;
>
> 4. On balance the equities do not support vacating the default judgment.

CP at 272.

NWMS appeals the order of default, the default judgments, and the order denying the motion to vacate.

## ANALYSIS

NWMS argues that we should vacate the order of default and default judgment because it presented substantial defenses to Morrone's causes of action. NWMS further argues that its failure to appear was due to mistake and excusable neglect that was solely due to a miscommunication by outside counsel, and that the trial court erred by imputing the "sins of the lawyer" on a blameless client. Br. of Appellant at 1, 12. Morrone argues that NWMS provided no evidence supporting any prima facie defense and that NWMS cannot show excusable neglect. We agree with NWMS that it presented prima facie defenses to some of Morrone's claims, and

11

we hold that NWMS presented a strong prima facie defense to Morrone's Family Leave Act claim. Accordingly, we hold that the trial court abused its discretion when it denied NWMS's motion to vacate the default judgment.

## I. STANDARDS FOR SETTING ASIDE DEFAULT JUDGMENT

Under CR 55(c), a trial court may set aside an entry of default or default judgment under CR 60(b). CR 60(b)(1) provides that a party may obtain relief from default judgment based on "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order."

### A. White *Test*

We review whether a trial court should set aside default judgment under CR 60(b)(1) by applying the four-part test our Supreme Court first laid out in *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968).

> A party moving to vacate a default judgment must be prepared to show (1) that there is substantial evidence supporting a prima facie defense; (2) that the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) that the defendant acted with due diligence after notice of the default judgment; and (4) that the plaintiff will not suffer a substantial hardship if the default judgment is vacated.

*Little v. King*, 160 Wn.2d 696, 703-04, 161 P.3d 345 (2007). Factors (1) and (2) are "primary" and (3) and (4) are "secondary." *VanderStoep v. Guthrie*, 200 Wn. App. 507, 517, 402 P.3d 883 (2017). Morrone does not contest that NWMS acted with due diligence. Thus, we need only consider factors (1), (2), and (4).

We determine whether default should be set aside as a matter of equity. *VanderStoep*, 200 Wn. App. at 517. Accordingly, when reviewing the trial court's decision to vacate default

judgment, we assess whether that decision is just and equitable. *Rush v. Blackburn*, 190 Wn. App. 945, 956-57, 361 P.3d 217 (2015). "Our primary concern is whether justice is being done." *VanderStoep*, 200 Wn. App. at 517. What is equitable is determined from the specific facts of each case, and is not a fixed rule. *Little*, 160 Wn.2d at 703.

B.       *Relationship Between Primary Factors*

"The strength of the defendant's defense determines the significance of the defendant's reasons for failing to timely appear and defend." *VanderStoep*, 200 Wn. App. at 518. When a defendant establishes only prima facie defenses, the defendant's reasons for failing to timely appear are a critical consideration. *Akhavuz v. Moody*, 178 Wn. App. 526, 533, 315 P.3d 572 (2013). However, when the defendant demonstrates strong or "virtually conclusive" defenses, we generally set aside default judgment regardless of why the defendant failed to timely appear, unless the failure was willful or the secondary *White* factors are not satisfied. *VanderStoep*, 200 Wn. App. at 518; *Akhavuz*, 178 Wn. App. at 533.

Here, NWMS argues it presented a prima facie defense to Morrone's breach of contract and willful withholding claims, and it raised observations that "were enough to defeat or *at least* create questions of fact about Morrone's non-contractual claims." Br. of Appellant at 24. Because NWMS raises stronger arguments on some defenses than others, but generally argues it has raised prima facie defenses, we address both primary factors. *See VanderStoep*, 200 Wn. App. at 518.

C.    *Standard of Review*

We review the trial court's ruling on a motion to vacate default judgment for an abuse of discretion. *Rush*, 190 Wn. App. at 956. "A trial court abuses its discretion by making a decision that is manifestly unreasonable or by basing its decision on untenable grounds or untenable reasons." *VanderStoep*, 200 Wn. App. at 518.

## II.  PRIMA FACIE DEFENSES

NWMS argues that it satisfied the first *White* factor because it presented prima facie defenses to Morrone's claims. We agree.

A.    *General Principles*

"To set aside a default judgment, a defendant generally must submit affidavits identifying specific facts that support a prima facie defense." *VanderStoep*, 200 Wn. App. at 519. Allegations or conclusory statements are insufficient. *VanderStoep*, 200 Wn. App. at 519. A defendant must present "concrete facts" to support a defense. *VanderStoep*, 200 Wn. App. at 519 (quoting *Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 449, 332 P.3d 991 (2014)) (internal quotation marks omitted).

In determining whether a defendant presented a prima facie case, the trial court does not weigh evidence as a trier of fact. *VanderStoep*, 200 Wn. App. at 519. Rather, the trial court views the evidence and draws reasonable inferences in the light most favorable to the defendant. *VanderStoep*, 200 Wn. App. at 519-20. "The trial court need only determine whether the defendant is able to demonstrate any set of circumstances that would, if believed, entitle the defendant to relief." *Ha*, 182 Wn. App. at 449.

14

B.      *Prima Facie Defense Analysis*

NWMS argues that the trial court erred when it concluded that NWMS did not provide substantial evidence supporting any defense.  Morrone argues that NWMS provided *no evidence* supporting any prima facie defense.  Here, the strength of NWMS's purported defenses to each of Morrone's claims vary, and NWMS provided evidence to support defenses to some claims.

1.  *Amount Certain Judgment*

We first address the initial default judgment for amount certain and NWMS's defenses to the claims resolved there.

a.  *Willful Wage Withholding*

NWMS argues that it presented a prima facie defense to Morrone's willful wage withholding claim because it provided evidence of a *bona fide* wage dispute.  We agree.

In its motion to vacate, NWMS pointed to a clause in Morrone's employment contract which stated, "Employee shall be entitled to salary and benefits during the three-year Contract Term regardless of whether Employee's employment is terminated, for any reason, before the three-year anniversary *unless Employee resigns his position before the end of the Contract Term.*"  CP at 187 (quoting CP at 135) (emphasis added).  NWMS argued that Morrone was not entitled to any bonuses or other benefits of the contract because he resigned before the end of the three-year term.  NWMS further argued that, even assuming that it was required to pay Morrone a bonus from the *Sunset Chevrolet* case, the court miscalculated the 10% value by including attorney fees, counter to the contract.

NWMS argues that it raised a *bona fide* dispute over whether Morrone is owed any wages based on the employment contract language and Morrone's resignation. We agree.

A willful withholding of wages under RCW 49.52.050(2) is a basis for double damages and reasonable attorney fees. RCW 49.52.070. However, a willful withholding is "the result of knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment." *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 849, 50 P.3d 256 (2002) (quoting *Chelan County Deputy Sheriffs' Ass'n v. Chelan County*, 109 Wn.2d 282, 300, 745 P.2d 1 (1987)) (internal quotation marks omitted). Where a *bona fide* dispute exists as to the amount of wages owed, a court may not find a willful failure to pay. *Durand v. HIMC Corp.*, 151 Wn. App. 818, 833, 214 P.3d 189 (2009).

NWMS raised a *bona fide* dispute both as to whether it owed Morrone wages because of his resignation, and whether the amount the trial court awarded was appropriate given the contract's language excepting attorney fees. Thus, evidence of a *bona fide* dispute creates a prima facie defense to a willful wage withholding claim.

Accordingly, we hold that NWMS raised at least a prima facie defense to Morrone's willful wage withholding claim.

b. *Violation of Washington Family Leave Act*

NWMS argues that it raised a prima facie defense to Morrone's claim that it violated the Family Leave Act. We agree and hold that NWMS raised at least a prima facie defense. Although the parties did not provide sufficient evidence to consider this a virtually conclusive defense, it is a strong one.

The legislature repealed the Family Leave Act in December 2017, effective December 2019.[5] That law, in effect at the time Morrone's wife suffered complications and gave birth, provided, among other things:

> [A]n employee is entitled to a total of twelve workweeks of leave during any twelve-month period for one or more of the following:
>
> (a) Because of the birth of a child of the employee and in order to care for the child;
>
> . . . .
>
> (c) In order to care for a family member of the employee, if the family member has a serious health condition.

Former RCW 49.78.220(1). Furthermore:

> (1) It is unlawful for any employer to:
>
> (a) Interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this chapter; or
>
> (b) Discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this chapter.

Former RCW 49.78.300.

Morrone claimed that NWMS interfered with his rights under the Family Leave Act, former RCW 49.78.330. Former RCW 49.78.330 provided for civil action by an employee against "[a]ny employer who violates RCW 49.78.300."

In its motion to vacate, NWMS argued that Morrone did not have standing under the Family Leave Act because it expired in December 2019 and he filed his claim in 2021. NWMS

---

[5] *See* former chapter 49.78 RCW (LAWS OF 2006, ch. 59, § 1), *repealed by* LAWS OF 2017, 3d Spec. Sess., ch. 5, § 98.

further argued that because Morrone took one week of leave he cannot show that NWMS interfered with his ability to take leave. Although NWMS cites no authority for its contention that the change in law divested Morrone of his ability to sue under the Family leave Act, it is axiomatic that the legislature can divest a plaintiff of a cause of action when it repeals a statute, absent a savings clause. *Hansen v. W. Coast Wholesale Drug Co.*, 47 Wn.2d 825, 827, 289 P.2d 718 (1955). It appears no savings clause exists here.[6] Accordingly, we hold that NWMS raised a strong prima facie defense regarding Morrone's Family Leave Act claim.

2. *Supplemental Judgment*

Turning to the claims the court ruled on in its supplemental judgment, NWMS argues it presented evidence of prima facie defenses to Morrone's other claims sufficient to satisfy the first of the *White* factors. We agree. For example, NWMS presented a prima facie defense to Morrone's disability discrimination claim.

Morrone claimed disability discrimination under WLAD, chapter 49.60 RCW. He claimed that his emotional distress and anxiety relating to his wife's pregnancy complications and the loss of their daughter was a disability that: "(i) [was] medically cognizable or diagnosable; or (ii) exists as a record or history; or (iii) was perceived to exist whether or not it existed in fact."[7] CP at 12.

---

[6] *See* LAWS OF 2017, 3d Spec. Sess., ch. 5.

[7] The definition Morrone cites is from RCW 49.60.040(7) (defining "disability") and aligns with WAC 162-22-020(1)-(2) (Human Rights Commission Employment Regulations).

Fleming's declaration states that he neither perceived Morrone to have any disability nor took any negative action against Morrone "in furtherance of any such belief." CP at 243. The evidence in Fleming's declaration demonstrates a set of circumstances that, if Fleming were to be believed, would entitle NWMS to relief. *See Ha*, 182 Wn. App. at 449. Taking all evidence in the light most favorable to NWMS, Fleming's declaration presented a prima facie defense to Morrone's disability discrimination claim.

### III.  REASON FOR FAILURE TO TIMELY APPEAR

NWMS argues it also satisfied the second *White* factor because NWMS's failure to appear was due to the mistake or excusable neglect of outside counsel and NWMS should not bear the "sins of the lawyer." Br. of Appellant at 12.

Where a defendant demonstrates strong defenses, there is no willful failure to appear, and the secondary *White* factors are satisfied, we may set aside the default judgment regardless of why the defendant failed to timely appear. *VanderStoep*, 200 Wn. App. at 518; *Akhavuz*, 178 Wn. App. at 533. "The strength of the defendant's defense determines the significance of the defendant's reasons for failing to timely appear and defend." *VanderStoep*, 200 Wn. App. at 518.

Here, NWMS presented several strong defenses, especially to Morrone's Family Leave Act claim. Accordingly, NWMS's reasons for failing to appear are not a critical consideration. *See Akhavuz*, 178 Wn. App. at 533. There is nothing in the record that shows NWMS willfully failed to appear. NWMS presented a reason for failing to appear: a miscommunication at

counsel's office. Although this was a weak reason, it was a reason that Willert declared to be a mistake.

### IV. HARDSHIP

NWMS argues that it satisfied the fourth *White* factor because there would be no substantial hardship visited on Morrone if the court were to grant the motion to vacate. Morrone argues that he would suffer hardship by continuing to have his wages withheld and having to relive the trauma associated with his loss. We agree with NWMS.

"[V]acation of a default judgment inequitably obtained cannot be said to substantially prejudice the nonmoving party merely because the resulting trial delays resolution on the merits." *Ha*, 182 Wn. App. at 455 (quoting *Johnson v. Cash Store*, 116 Wn. App. 833, 842, 68 P.3d 1099 (2003)) (internal quotation marks omitted). "The prospect of having to go to trial is not, by itself, enough to constitute substantial hardship." *Akhavuz*, 178 Wn. App. at 539. Hardship occurs, for example, when evidence has gone stale as a result of a delay. *Akhavuz*, 178 Wn. App. at 539.

Morrone cannot show more than a delay of judgment and the prospect of trial, which are not substantial hardships. We hold that NWMS has satisfied the fourth *White* factor.

### CONCLUSION

NWMS has met all the *White* factors. Although NWMS presents defenses of varying strengths to Morrone's multiple claims, it presents several strong defenses, especially to his Family Leave Act claim. NWMS also showed that its failure to appear was due to mistake. Morrone cannot show that proceeding to trial would result in hardship. Considering all the

factors and determining whether default should be set aside as a matter of equity, we hold that the trial court abused its discretion when it denied NWMS's motion to vacate. We set aside the default judgment for amount certain and the supplemental default judgment. We deny Morrone's request for reasonable attorney fees because he does not prevail on appeal. We reverse.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Glasgow, C.J.

Price, J.