# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TALON CUTLER-FLINN, | No. 57159-5-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, | |
| Respondent. | |

CHE, J. — Talon Cutler-Flinn appeals the trial court's determination that the Department of Corrections (DOC) did not violate the Public Records Act (PRA), ch. 42.56 RCW, and the dismissal of his claims. Flinn filed three PRA requests with DOC. The trial court granted partial judgment as to request P-24146, rejecting Flinn's argument that, under RCW 42.56.120, when DOC provides responsive records with copies—rather than through an agency computer—DOC cannot withhold records it routinely maintains on its website until the requestor pays the copy fees.

DOC moved for a show cause hearing regarding requests P-19154 and P-19587, which Flinn did not respond to. The trial court dismissed those claims. Throughout this proceeding, an attorney, Robert Thompson, assisted Flinn including by filing certain documents, some of which referenced himself as Flinn's attorney. Thompson and Flinn later denied an attorney-client relationship. The trial court declined to set aside the judgment relating to P-19154 and P-19587 on that basis.

We hold (1) there was nothing improper about DOC assessing copying charges as a prerequisite to Flinn receiving copies of the P-24146 records, (2) Flinn abandoned his arguments as to P-19154 and P-19587 by failing to respond to the show cause hearing, (3) there was no prejudice stemming from the trial court's deposition order, and (4) the trial court did not abuse its discretion by declining to recuse itself. We decline to review (1) the motion to order Thompson's appearance and related matters as those matters were insufficiently briefed, (2) Flinn's motion for relief from judgment under CR 59 and 60 on the same basis, and (3) the protective order because Flinn failed to show that he preserved his arguments on appeal and relatedly did not designate the relevant hearing for our record. We decline Flinn's request for costs and affirm.

FACTS

Flinn filed three PRA requests. In 2022, Flinn filed a complaint alleging that DOC violated the PRA in regard to those requests. As to P-24146, Flinn alleged DOC violated the PRA by withholding the requested records until Flinn paid for copying costs. During the relevant time frame, Flinn has been incarcerated in a DOC facility and did not appear to have access to the internet.

I. PRA REQUESTS

A.    *P-24146*

Flinn requested two DOC policies, which DOC assigned P-24146 as the tracking number. The two DOC policies requested were available on DOC's website. DOC identified seven responsive documents and assessed Flinn $1.75 in copying costs for the records. Flinn

maintained that the PRA did not authorize DOC to charge him for access to those records, citing RCW 42.56.120(2)(e).

DOC moved for partial judgment on the pleadings under CR 12(c) regarding this request, which the trial court granted as "[DOC] complied with the PRA by offering [Flinn] copies of the documents, upon payment of a copying charge, that he requested." Clerk's Papers (CP) at 26.

B.      *P-19154 & P-19587*

DOC assigns individuals a certain custody level based on safety and programming considerations. DOC regularly reviews custody level designations. Flinn went through this process and made a PRA request for all records used in his 2021 custody classification review. DOC assigned P-19154 as the relevant tracking number.

Flinn requested to mail items as art curio items, but DOC rejected the request. Flinn filed a PRA request for a copy of the final rejection decision, photos of the items in question, other documents relating to the matter, and for the names of people involved in the process. DOC assigned P-19587 as the tracking number for this request.

At the May 27, 2022 hearing in this matter, it appears that the trial court discussed with Flinn and DOC the scheduling of the merits hearing and determined that the merits hearing would be set for September 23, 2022. In early August 2022, DOC moved for a show cause hearing regarding P-19154 and P-19587. This motion was served only on attorney Robert Thompson, whose involvement will be examined below.

On September 14, 2022, the trial court ordered the hearing to be held without oral argument on September 23 and stated, "The parties should file and serve all pleadings timely and submit proposed orders by the hearing date." CP at 532. The certificate of service reflects that

the scheduling order was sent to Robert Thompson at his office and Flinn at the Washington State Penitentiary. But as addressed in greater detail below, Flinn contests that he received the scheduling order.

Neither Flinn nor Thompson responded to the show cause motion. And the trial court made the unchallenged finding that Flinn "had ample ability to litigate this case and file a response to the [DOC's] motion." CP at 535. On September 29, the trial court determined that DOC did not violate the PRA and dismissed Flinn's remaining PRA claims. Flinn moved the trial court to reconsider the aforementioned PRA order under CR 59 and 60.

C. *Attorney Thompson*

Before DOC moved for a show cause hearing regarding P-19154 and 19587, DOC had received the following information. DOC counsel received an email from rjt@robertjthompsonlawoffice.com, without a signature, that stated that "Bob is working with Mr. Cutler-Flinn." CP at 697. The subject of the email read, "Cutler-Flinn v. WSDOC - Thurston County Superior Court cause #21-2-02090-34." CP at 697. That is the same cause number as the present action. DOC counsel had previously received emails from the rjt@robertjthompsonlawoffice.com email address from the attorney Robert Thompson.

DOC responded, "I assume then that you will be filing a notice of appearance in the coming days in this case? Please let me know. Until then, [DOC] will cease communicating with [Flinn] based on the understanding that [Thompson] intend[s] to represent [Flinn] in this case." CP at 696. After not receiving a response for several days, DOC sought clarification

4

whether Thompson was representing Flinn in this matter. DOC counsel also reached out to Flinn to clarify whether he was represented by Thompson.[1]

Thompson's office sent DOC counsel an email with a notice of appeal and a designation of clerk's papers, citing the present superior court cause number. The attached notice of appeal referenced an appeal of a partial judgment, cited the present superior court cause number, and began, "Plaintiff . . . Flinn, through his attorney of record . . . Thompson" and was signed by "Robert J. Thompson . . . Attorney for the Plaintiff." CP at 703. But the attached order is from an unrelated matter and is not a partial judgment order. The attached designation of clerk's papers also cites the present cause number and was signed in two places by "Thompson . . . Attorney for the Plaintiff." CP at 711, 713. DOC counsel believed Thompson was representing Flinn, and so, DOC stopped communicating directly with Flinn.

Later, the Thurston County Clerk's Office sent DOC counsel and Thompson, referencing him as counsel for Flinn, a letter about a case index in this matter. Thompson's office sent an email to DOC counsel with another designation of clerk's papers for appeal in this matter; that designation was signed by "Robert J. Thompson . . . Attorney for the Plaintiff." CP at 720. That same day, this court let Thompson's office know that the filing fee had not been paid for Flinn's appeal in this matter. Thompson's office immediately responded by emailing a receipt of a filing fee for the partial judgment appeal in this matter and copied DOC counsel.

---

[1] A few months later, DOC counsel informed Thompson, via email, that Flinn continued to send correspondence to DOC counsel directly, but the Rules of Professional Conduct prohibit DOC counsel from responding to Flinn without the consent of Thompson. DOC counsel believed that Thompson represented Flinn and asked Thompson to instruct Flinn to cease attempting to contact DOC counsel, or alternatively, to provide consent for DOC counsel to notify Flinn that any communication should come through Thompson.

After the show cause motion was filed but before the PRA order was entered on September 29, the following occurred. DOC received two affidavits of counsel from Thompson requesting continuances to file Flinn's motion for discretionary review that both stated, "I am the attorney for . . . Flinn"[2] and both were signed by Thompson as "Counsel for Petitioner." CP at 738-39, 748-749. Flinn, pro se, moved for different briefing timelines regarding the appeal of the partial judgment citing concerns about communicating with Thompson.[3] As stated above, the trial court entered the PRA order on September 29.

On October 17, in the same motion as Flinn's request for reconsideration under CR 59 and 60, Flinn moved for the trial court to "order unidentified attorney to appear and provide authority to act in this matter and relieve Mr. Flinn from the [September 29] PRA order." (most capitalization omitted) CP at 549. Flinn attached a declaration stating that "I am not, nor have I ever been represented by council in this matter." CP at 552. And Flinn asserted that he did not receive notice of the motion to show cause or the related scheduling order.

Thompson moved to withdraw and submitted an affidavit explaining his limited involvement with Flinn. Thompson "assisted" Flinn "but ha[s] not acted as his attorney." CP at 839.

---

[2] Notably, Thompson also filed a brief for Flinn in a related matter with this court, identifying himself as the attorney for Flinn.

[3] Flinn explained he was transferred to a county jail on June 21, 2022, and did not return to the Washington State Penitentiary (DOC) until about September 7, 2022. Flinn indicated that during this time, Flinn did not have access to his files, some correspondence from Thompson to Flinn was returned to Thompson, and Flinn was unable to communicate with Thompson regarding this matter.

6

Thompson attached proposed filings prepared by Flinn in four docket numbers—only two proposed filings involved this matter. Essentially, the proposed filings prepared by Flinn would both (1) withdraw Thompson as appellate counsel and enter Thompson, in both the superior court case and appellate court case, with a limited notice of appearance under CR 70.1(b) and (2) have Thompson accept judgment and costs on behalf of Flinn under RCW 2.44.010(2) at Thompson's address. Subsequently, the trial court denied Flinn's request for reconsideration and his request for relief based on his relationship to Thompson.

## II. OTHER CHALLENGED RULINGS

In March 2022, DOC moved for leave to depose Flinn and Jeffrey McKee, who was also incarcerated. The trial court granted the motion as to McKee.

In April 2022, DOC moved for a protective order with respect to interrogatories and imposing discovery limits, which the trial court granted in large part. In May 2022, DOC moved for a second protective order related to discovery requests. Flinn did not respond and explained that he could not respond because of his limited access to legal research and copying materials while incarcerated. The trial court granted the second protective order.

In June 2022, Flinn moved to recuse the trial court judge under the appearance of fairness doctrine. The court later ruled, "The Court has considered the alleged bases for recusal and concludes that recusal is unnecessary." CP at 535.

Flinn appeals.

ANALYSIS

I. PRA

Flinn argues that DOC violated the PRA in its response to P-24146, P-19154, and P-19587. In summary, we hold that Flinn's challenge to P-24146 fails, and he waived his challenge to P-19154 and P-19587.

"The PRA is a 'strongly worded mandate for broad disclosure of public records.'" *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 78, 493 P.3d 1245 (2021) (internal quotation marks omitted) (quoting *Serv. Employees Int'l Union Local 925 v. Univ. of Wash.*, 193 Wn.2d 860, 866, 447 P.3d 534 (2019)). Agencies must conduct adequate searches for responsive records under the PRA. *Id*. at 79. We review agency actions under the PRA and trial court rulings under the PRA de novo. *Id*.

A.      *P-24146*

Flinn argues that the trial court erred in granting partial judgment to DOC on P-24146. Flinn argues that, under RCW 42.56.120, when DOC provides responsive records with copies—rather than through an agency computer—DOC cannot withhold records it routinely maintains on its website until the requestor pays the copy fees. We disagree.

We review de novo judgment on the pleadings and questions of statutory interpretation. *Est. of McCartney v. Pierce County*, 22 Wn. App. 2d 665, 676, 513 P.3d 119, *review denied,* 200 Wn.2d 1014, 519 P.3d 590 (2022); *Associated Press v. Wash. State Legis.*, 194 Wn.2d 915, 920, 454 P.3d 93 (2019).

When engaging in statutory interpretation, we "'ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that

plain meaning as an expression of legislative intent.'" *Associated Press*, 194 Wn.2d at 920

(quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). We

discern the plain meaning of a statute by looking to the text of "'the statute and related statutes

which disclose legislative intent about the provision in question.'" *Id*. (quoting *Campbell*, 146

Wn.2d at 11).

We interpret the statute in such a manner as to give effect to all the language and not to

render any text superfluous. *Id*. We give undefined terms their ordinary meaning unless there is

legislative intent to the contrary. *State v. Valdiglesias LaValle*, 2 Wn.3d 310, 318, 535 P.3d 856

(2023). "Only if the statute remains ambiguous—that is, 'susceptible to more than one

reasonable meaning'—is it appropriate to resort to legislative history." *Associated Press*, 194

Wn.2d at 920 (quoting *Campbell*, 146 Wn.2d at 12).

An agency may respond to a PRA request by,

> (b) Providing an internet address and link on the agency's website to the specific records requested, except that if the requester notifies the agency that he or she cannot access the records through the internet, then the agency must provide copies of the record *or* allow the requester to view copies using an agency computer.

RCW 42.56.520(1)(b) (emphasis added).

Under the PRA, "A reasonable charge may be imposed for providing copies of public

records." RCW 42.56.120(1). But

> An agency shall not impose copying charges under this section *for access to or downloading of records* that the agency routinely posts on its public internet website *prior to receipt of a request* unless the requestor has specifically requested that the agency provide copies of such records through other means.

RCW 42.56.120(2)(e) (emphasis added).

It is undisputed that DOC maintains the responsive records for P-24146 on its website. Under RCW 42.56.520(1)(b), DOC had the option to provide copies or allow Flinn to view copies using an agency computer.

The question is whether DOC could properly assess copying charges for the responsive records given that it maintained the responsive records on its website. We conclude that DOC could properly assess copying charges as RCW 42.56.120(2)(e) is not implicated under these circumstances. RCW 42.56.120(2)(e) is not implicated here because it prohibits only the imposition of copying charges "prior to receipt of a request unless the requestor has specifically requested that the agency provide copies of such records through other means." That language allows DOC to charge for copies if the petitioner makes a PRA request seeking records through means other than accessing or downloading the records on the agency's public internet website.

Here, Flinn filed a request to inspect records maintained on the agency website in a method other than access to or downloading through the agency's public internet website. DOC was permitted to assess charges for providing physical copies under this circumstance. RCW 42.56.120(2)(e) does not mandate that DOC provide him with an agency computer free of charge to take advantage of the provision. If Flinn had had internet access, that statute would generally prohibit DOC from imposing copying charges on Flinn for downloading records or otherwise electronically accessing the records it routinely posts on its public internet website. We hold that there was nothing improper about DOC assessing copying charges as a prerequisite to Flinn receiving copies of the P-24146 records.

10

B. *PRA Order Regarding P-19154 and P-19587*

DOC argues that we should not consider Flinn's challenges to P-19154 and P-19587 because Flinn did not respond to DOC's show cause motion or file written briefing for the hearing regarding these requests. We agree.

A party abandons claims "by failing to argue them in the show cause proceedings." *West v. Gregoire*, 184 Wn. App. 164, 170, 336 P.3d 110 (2014). "Requiring a PRA claimant to address all PRA claims during show cause proceedings in order to avoid abandonment promotes the orderly administration of PRA requests and is consistent with the purposes of the PRA." *Id.* at 172.

Here, the service of process declaration shows both Flinn and Thompson were sent notice of the show cause scheduling order, which indicated the parties should file pleadings and proposed orders by the hearing date and the hearing would be held without oral argument. Neither Thompson nor Flinn responded in writing to the show cause motion. And the trial court made the unchallenged finding that Flinn "had ample ability to litigate this case and file a response to the [DOC's] motion."[4] CP at 535. By failing to respond, Flinn abandoned his arguments as to P-19154 and P-19587. But Flinn may properly attack the PRA order regarding P-19154 and P-19587 through the CR 59 and 60 framework, which we address below.

---

[4] While it is true that Flinn contested below that he received notice of the show cause motion and related scheduling order, Flinn failed to assign error to the aforementioned finding of fact, making it a verity on appeal. *Alexandria Real Estate Equities, Inc. v. Univ. of Wash.*, __ Wn. 3d __ , 539 P.3d 54, 66 (2023).

C. *CR 59 and 60*

Flinn argues that the trial court erred in not granting him relief from judgment or reconsideration under CR 59 or 60. Flinn concedes that DOC's initial decision to serve Thompson the show cause motion was proper due to the precarious position Thompson's actions put DOC in. Flinn appears to argue that the trial court abused its discretion in determining that DOC was entitled to rely upon the fact that Thompson had authority to act on Flinn's behalf as it prevented Flinn from having notice of the show cause motion and related hearing. We disagree.

CR 59 provides that the superior court may vacate a verdict and grant a new trial for a series of enumerated "causes materially affecting the substantial rights of such parties." CR 59(a). The grounds include irregularity in the proceedings, misconduct, and "[t]hat substantial justice has not been done," among others. CR 59(a)(9). "Courts rarely grant reconsideration under CR 59(a)(9) for lack of substantial justice because of the other broad grounds afforded under CR 59(a)." *Sligar v. Odell*, 156 Wn. App. 720, 734, 233 P.3d 914 (2010).

CR 60(b) provides that the superior court may relieve a party from an order for enumerated reasons, including "(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order."

> A party moving to vacate under CR 60(b)(1) must show that (1) there is substantial evidence supporting a prima facie defense; (2) the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) the defendant acted with due diligence after notice of the default judgment; and (4) the plaintiff will not suffer a substantial hardship if the default judgment is vacated.

*Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 448-49, 332 P.3d 991 (2014).

12

"A motion for reconsideration and motion to vacate a dismissal are to be decided by the trial court in exercise of its discretion and its decision will be overturned only if the court abused its discretion." *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002).

Flinn blends his arguments under CR 59 and CR 60 without making any distinction. He does not specify which subsections of CR 59 and CR 60 he is asserting. And he fails to provide authority to develop his claims beyond the standards of review. To the extent he is arguing for relief under CR 60(b)(1), he fails to address the relevant factors. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014). We determine that Flinn's passing argument is insufficient to merit our review.

II. MOTION TO ORDER THOMPSON'S APPEARANCE AND PROVIDE PROOF OF AUTHORITY TO REPRESENT FLINN

Flinn argues that the trial court erred by determining that Thompson had authority to represent Flinn in this matter and that DOC could rely on the fact that Thompson represented Flinn. Flinn relatedly argues that the trial court abused its discretion by not ordering Thompson to provide proof of representation. DOC raises Flinn's failure to cite authority to preclude review. We agree with DOC.

As a preliminary matter, the trial court did not decide that Thompson had authority to represent Flinn; instead, the trial court ruled that DOC "was entitled to rely upon the fact that Mr. Thompson had authority to act on [Flinn's] behalf." CP at 851. So, Flinn's first argument relies upon a mischaracterization of the court's ruling.

13

Flinn disagrees with the trial court's determination. Flinn cites only RCW 2.44.020 and 2.44.030 for the propositions that superior courts have discretion (1) to relieve a party from the consequences of an attorney's action if a party alleges that the attorney lacked authority to appear for them and (2) to "require the attorney for the adverse party . . . to produce or prove the authority under which he or she appears, and until he or she does so, may stay all proceedings by him or her on behalf of the party for whom he or she assumes to appear," respectively. We agree that the trial court has such discretion under those statutes.

But citing to those statutes does not make clear why the trial court abused its discretion under these circumstances—it merely shows that the trial court has discretion to remedy such a problem. The statutes do not preclude the trial court's actions under these circumstances.

Flinn fails to cite any other authority to show that these decisions were erroneous as required by RAP 10.3(a)(6) (requiring citation to legal authority). Because Flinn's arguments lack citation to authority and analysis of such authority to the facts, we decline to reach them.

### III. PROTECTIVE ORDER

Flinn argues that the trial court abused its discretion in granting DOC's second protective order request. DOC argues that Flinn waived this issue by failing to create an adequate record for review. We generally agree with DOC.

"We defer to a trial court's discovery rulings and will not interfere absent an abuse of discretion causing prejudice." *Stratford v. Umpqua Bank*, 2 Wn.3d 112, 126, 534 P.3d 1195 (2023). If the trial court's decision was based on untenable grounds or reasons or the decision was manifestly unreasonable, the trial court abused its discretion. *Id*.

14

We may refuse errors raised for the first time on review, subject to certain exceptions. RAP 2.5(a). "[T]he appellant bears the burden of perfecting the record so that we have before us all of the evidence relevant to deciding the issues presented." *Yorkston v. Whatcom County*, 11 Wn. App. 2d 815, 824, 461 P.3d 392 (2020).

Flinn did not respond in writing to DOC's second protective order motion, citing lack of access to legal research and copying difficulties. In a subsequent motion, Flinn indicated that he orally requested a continuance at the hearing on the motion.

As the basis for granting the second protective order, the trial court in its written ruling incorporated the reasons stated in its oral ruling and those in DOC's motion. First, our record does not include the transcript of the oral ruling. Without such a record, we cannot determine some of the grounds for the trial court's ruling.

Second and more importantly, Flinn did not respond to the second protective order motion, so to the extent Flinn objected—if at all—would be evident in the transcript from the hearing on the protective order. But Flinn did not designate that hearing for review. Thus, it is unclear whether Flinn preserved any of his arguments he now makes regarding the protective order. Flinn does not address RAP 2.5. We decline to presume that Flinn preserved his arguments below at that hearing. Thus, we decline to review Flinn's arguments as he failed to meet his burden to designate the record to show that the arguments he now asserts are properly before us under RAP 2.5.

## IV. LEAVE TO DEPOSE PRISONERS

Flinn argues that the trial court erred when it granted DOC leave to depose Flinn and McKee—incarcerated individuals—because DOC did not comply with the meet and confer

requirement under CR 26(i) or submit the required affidavit under RCW 5.56.100. DOC argues that the trial court's ruling had no practical effect in this matter because no depositions were taken or used as evidence. We agree with DOC.

As stated above, we do not interfere with the trial court's discovery ruling "absent an abuse of discretion causing prejudice." *Stratford*, 2 Wn.3d at 126. If the challenged depositions did not occur, it is unclear what prejudice they could have. Flinn does not point to such a deposition occurring in his briefing nor does he indicate what prejudice resulted from the ruling. And our record does not contain such a deposition. Because DOC did not appear to take the challenged depositions, we decline to interfere with the trial court's discovery ruling.

V. APPEARANCE OF FAIRNESS

Flinn argues that the trial court erred in declining to recuse itself under the appearance of fairness doctrine because the judge's ruling implicitly showed bias against him. DOC argues that Flinn's disagreement with the judge's rulings do not provide a valid basis for recusal. We agree with DOC.

Recusal decisions are reviewed for an abuse of discretion. *State v. C.B.*, 195 Wn. App. 528, 544, 380 P.3d 626 (2016). When the judge fails to recuse themselves despite being required to do so by the judicial canons, the failure to recuse implicates the constitutional appearance of fairness doctrine. *Id*. at 545. Before the doctrine may be applied, "there must be evidence of a judge's actual or potential bias." *Id*. If such evidence is presented, "'[t]he test is whether a reasonably prudent and disinterested observer would conclude [the party] obtained a fair, impartial, and neutral trial.'" *Id*. (quoting *State v. Dominguez*, 81 Wn. App. 325, 330, 914 P.2d 141 (1996)). Judicial rulings alone "'almost never constitute a valid showing of bias.'" *West v.*

*Ass'n of Dist. & Mun. Court Judges*, 190 Wn. App. 931, 943, 361 P.3d 210 (2015) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004)).

As far as legal analysis goes, in the relevant section of Flinn's brief, he merely writes the phrase, "Appearance of Fairness Doctrine," and then cites the standard for general recusal decisions. It is somewhat unclear if he is actually asserting a claim that the appearance of fairness doctrine has been violated. Nevertheless, we infer that he is making such an argument.

As to evidence of bias, Flinn cites the judge's decisions to not grant him continuances, to rule against him on the aforementioned deposition issue, and to deny his motion for relief and related requests stemming from his relationship with Thompson. Flinn fails to identify anything beyond unfavorable court rulings that show that the appearance of fairness doctrine was violated under these circumstances. We conclude that these mere rulings are insufficient to create a valid showing of bias. Thus, Flinn's argument fails.[5]

## VI. COSTS ON APPEAL

Flinn requests all costs on appeal and a penalty hearing on remand.

We may award a party reasonable attorney fees and expenses on appeal if applicable law grants the party a right to recover those and the party properly requests them. RAP 18.1(a)-(b). "Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs." RCW 42.56.550(4).

Because Flinn does not prevail, we decline his request for costs.

---

[5] Finally, Flinn argues that the trial court should make reasonable accommodations for Flinn to timely file motions and responses on remand. Because we do not remand, we decline to address Flinn's requests regarding remand.

No. 57159-5-II

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
Che, J.

We concur:

_____
Maxa, P.J.

_____
Veljacic, J.

18